

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00749-CV

**IN THE INTEREST OF A.R.G.** and J.D.M.G., Children

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-PA-00609
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Rebeca C. Martinez, Justice

Sitting:        Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed: March 18, 2020

AFFIRMED

Appellant ("Mother") appeals from a judgment terminating her parental rights to her children, A.R.G. and J.D.M.G. Mother challenges the sufficiency of the evidence to support the trial court's findings on two of the four predicate statutory grounds for termination and the finding that termination is in the children's best interest. We affirm.

### BACKGROUND

On March 26, 2018, the Texas Department of Family and Protective Services (the "Department") filed a petition to terminate Mother's parental rights. The trial court held a bench trial on October 8, 2019. At the time of trial, A.R.G. was five, J.D.M.G. was seven, and Mother's oldest child, A.J.N., who had been dismissed from the suit before trial, was eighteen.

Only the Department's caseworker testified on matters relevant to this appeal.[1] The Department's caseworker testified that the children came into the Department's care following an incident in which the police were called. According to the caseworker, Mother was driving with her children while "very angry" and "high on meth." Mother "threw out the oldest child, [A.J.N.], at the side of the road." According to the caseworker, Mother had done this several times previously; sometimes Mother came back for A.J.N., but other times Mother "just le[ft] [A.J.N.] walking." On the occasion immediately prior to removal, Mother abandoned A.J.N.

Following the removal of the children, the Department created a service plan for Mother. As part of this court-ordered plan, Mother was required to complete a drug assessment, demonstrate sobriety through random drug tests, complete a psychological evaluation, follow recommendations resulting from the psychological evaluation, engage in individual counseling, follow therapeutic recommendations from her counselor, and attend parenting classes. The Department's caseworker reviewed the plan with Mother, and Mother signed it. However, Mother did not complete any of the services her plan required of her, other than a psychological evaluation and perhaps the completion of parenting classes.[2] According to the caseworker, Mother was dismissed from counseling because of her paranoia. The caseworker testified: "The counselor felt that [Mother's] drug use is so extensive, that she is paranoid and cannot concentrate on the task at hand." In addition, the caseworker testified that Mother was dismissed from other services for nonattendance and Mother did not complete any of the eighteen drug tests the Department scheduled.

---

[1] An alleged father also testified. The trial court ordered his dismissal following testimony that he was not a biological father of the children.

[2] Mother told the caseworker that she completed her parenting classes, but the caseworker could not confirm her completion of those classes.

The caseworker acknowledged there was a bond between Mother and her children. Mother visited her children after their March 2018 removal but stopped visiting in December 2018. She resumed her visits in June 2019. In September 2019, Mother missed all four of her scheduled visits with her children. According to the caseworker, visitation reports indicated that Mother arrived late to her visits and was not appropriately attentive to her children.

At the time of trial, the children were placed with a paternal aunt and were thriving. According to the caseworker, the placement met all of the children's needs and offered "the possibility of adoption."

Based on this evidence, the trial court ordered the termination of Mother's parental rights to A.R.G. and J.D.M.G. pursuant to section 161.001 of the Texas Family Code. Mother timely appealed.

### STANDARD OF REVIEW AND STATUTORY REQUIREMENTS

A mother's parental rights may be terminated, pursuant to section 161.001, only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in subsection (b)(1) and that termination is in a child's best interest. TEX. FAM. CODE ANN. § 161.001(b)(1), (2). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

In this case, the trial court found clear and convincing evidence of the following four predicate grounds under subsection 161.001(b)(1) to terminate Mother's parental rights: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the children's physical or emotional well-being; (3) constructively abandoned the children; and (4)

failed to comply with a court-ordered service plan. *See id.* § 161.001(b)(1)(D), (E,) (N), (O). The trial court also found clear and convincing evidence that terminating Mother's parental rights was in the children's best interest. *See id.* § 161.001(b)(2).

We review the legal and factual sufficiency of the evidence under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266–67 (Tex. 2002). Under these standards, "[t]he trial court is the sole judge of the weight and credibility of the evidence, including the testimony of the Department's witnesses." *In re F.M.*, No. 04-16-00516-CV, 2017 WL 393610, at *4 (Tex. App.—San Antonio Jan. 30, 2017, no pet.) (mem. op.) (first citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam); then citing *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005)).

## PREDICATE STATUTORY GROUNDS

Generally, "if multiple predicate grounds are found by the trial court, we will affirm based on any one ground, assuming a proper best interest finding." *In re A.R.R.*, No. 04-18-00578-CV, 2018 WL 6517148, at *1 (Tex. App.—San Antonio Dec. 12, 2018, pet. denied) (mem. op.). However, because termination under section 161.001(b)(1)(D) or (E) may have implications for a parent's parental rights to other children, we must address issues raised on appeal challenging a trial court's findings under those subsections. *In re N.G.*, 577 S.W.3d 230, 236–37 (Tex. 2019) (per curiam). "[T]he evidence concerning [those] two statutory grounds for termination is interrelated," and, accordingly, we consolidate our analysis. *In re J.T.G.*, 121 S.W.3d 117, 126 (Tex. App.—Fort Worth 2003, no pet.).

Section 161.001(b)(1)(D) allows a trial court to terminate parental rights if it finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Under subsection (D), the trial court examines

"evidence related to the environment of the children to determine if the environment was the source of endangerment to the children's physical or emotional well-being," although parental conduct can be a factor that contributes to this environment. *In re J.T.G.*, 121 S.W.3d at 125. "'Environment' refers to the acceptability of living conditions, as well as a parent's conduct in the home." *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *Id*. "[A] parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient." *In re R.S.-T.*, 522 S.W.3d 92, 109 (Tex. App.—San Antonio 2017, no pet.) (internal quotation omitted).

Section 161.001(b)(1)(E) allows a trial court to terminate a parent's rights if the court finds by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Under subsection (E), the trial court must determine whether there is evidence that a parent's acts, omissions, or failures to act endangered the child's physical or emotional well-being. *See In re J.T.G.*, 121 S.W.3d at 125.

In the context of both subsection (D) and (E), "endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or mental health. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam); *In re J.T.G.*, 121 S.W.3d at 125. "However, there are some distinctions in the application of subsections (D) and (E)." *A.S. v. Tex. Dep't of Family & Protective Servs.*, 394 S.W.3d 703, 713 (Tex. App.—El Paso 2012, no pet.). First, termination under subsection (D) is permitted based upon only a single act or omission. *In re R.S.-T.*, 522 S.W.3d at 109. Conversely, under subsection (E), our analysis may not rest on a single act or omission; it must be "a voluntary, deliberate, and conscious course of conduct." *Jordan v. Dossey*, 325 S.W.3d 700, 723 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Second, "[i]n evaluating endangerment

under subsection (D), we consider the child's environment before the Department obtained custody of the child." *In re S.R.*, 452 S.W.3d at 360. "Under subsection E, however, courts may consider conduct both before and after the Department removed the child from the home." *Id*.

Mother argues that the evidence arising from the allegations which led to removal does not support the trial court's finding under subsection (D) because the incident did not involve A.R.G. and J.D.M.G. and because the allegations do not involve the children's "living environment." On this point, Mother is mistaken. The Department's caseworker briefly summarized the incident preceding removal, testifying Mother "was driving with the *children* in the car, and she was very angry and she was high on meth." (emphasis added). Although Mother only expelled the oldest child, A.J.N., the caseworker's testimony is clear that the younger children, A.R.G. and J.D.M.G., were present. Further, Mother does not explain what she means by "living environment" and provides no authority suggesting that the findings under subsection (D) must be limited to the child's home. Mother concedes that a parent's criminal conduct and illegal drug use may "support a conclusion that the child's surroundings endanger his or her physical and emotional well-being." Subsection (D) concerns endangering "conditions or surroundings" generally and is not limited to a child's home. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D) (providing a predicate ground for termination if a parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child"); *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) ("'[E]ndanger' means to expose to loss or injury; to jeopardize."); *In re S.R.*, 452 S.W.3d at 360 ("A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards."); *cf. In re R.H.*, No. 10-17-00054-CV, 2017 WL 4293268, at *5–6 (Tex. App.—Waco Sept. 27, 2017, pet. denied) (mem. op.) (holding the evidence was sufficient to establish a subsection (D) predicate ground for termination where the evidence showed that an intoxicated mother drove with

her children in her vehicle onto railroad tracks where the vehicle became disabled). Here, the caseworker's testimony that Mother drove with her children in her car while under the influence of methamphetamine supports the trial court's finding that the children were endangered, thereby jeopardizing their safety, within the meaning of subsection (D).

As to subsection (E), Mother argues that the single incident precipitating removal is alone insufficient to support a subsection (E) finding. While Mother is correct that a single incident alone cannot support a subsection (E) finding, *see Jordan*, 325 S.W.3d at 723, the record contains other evidence upon which the trial court could rely for its finding. The caseworker testified that Mother was "high on meth" during the incident preceding removal. The caseworker also testified that, after the children's removal, Mother did not attend any of her eighteen scheduled drug tests and Mother's counselor dismissed her because the counselor believed Mother's drug use was so extensive she could not concentrate. From this evidence, the trial court could infer that Mother continued her illegal drug use after her children's removal, and the trial court could appropriately conclude that Mother's continued drug use was a course of conduct that endangered the well-being of her children. *See In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, no pet. h.) (mem. op.) (explaining that a trial court could infer a parent's drug abuse from the parent's failure to submit to drug testing); *In re D.M.M.*, No. 14-16-00664-CV, 2017 WL 61847, at *5 (Tex. App.—Houston [14th Dist.] Jan. 5, 2017, pet. denied) (mem. op.) ("Continued illegal drug use [by the parent] . . . is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct . . . .").

We hold that the evidence is legally and factually sufficient to support the trial court's findings under subsections (D) and (E). We do not address the trial court's findings under subsections (N) and (O) because Mother does not challenge those findings and because only one

predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination. *See In re N.G.*, 577 S.W.3d at 237 n.1; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

### BEST INTEREST FINDING

Our best-interest analysis is guided by consideration of the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See id.*; *accord In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013). The foregoing factors are not exhaustive, and the absence of evidence regarding some of the factors does not preclude the factfinder from reasonably forming a strong conviction that termination is in a child's best interest, particularly if the evidence is undisputed that the parent-child relationship endangered the safety of the child. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

Here, the evidence supports the trial court's endangerment findings, and Mother does not contest findings that she abandoned her children and failed to comply with a court-ordered service plan. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O); *In re C.H.*, 89 S.W.3d at 28 (explaining that evidence that proves one or more statutory grounds for termination may be probative in proving termination is in a child's best interest). Mother's drug use not only supports the trial court's endangerment findings, but it also suggests inadequate parenting skills and the instability of Mother's home. *See In re D.D.M.*, No. 01-18-01033-CV, 2019 WL 2939259, at *7 (Tex. App.—Houston [1st Dist.] July 9, 2019, no pet.) (mem. op.); *In re A.H.L.*, No. 01-16-00784-

CV, 2017 WL 1149222, at *5 (Tex. App.—Houston [1st Dist.] Mar. 28, 2017, pet. denied) (mem. op.) ("A parent's drug use may indicate instability in the home because it exposes the children to the possibility that the parent may be impaired or imprisoned."). Here, according to her counselor, Mother's extensive drug use prevented her from concentrating and caused her paranoia, which led to her dismissal from counseling. *See* TEX. FAM. CODE ANN. § 263.307(b)(10) (providing courts may consider willingness and ability of the child's family to seek out, accept, and complete counseling services); *see also In re A.N.*, No. 04-19-00584-CV, 2020 WL 354773, at *4 (Tex. App.—San Antonio Jan. 22, 2020, no pet. h.) (mem. op.) ("A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of h[er] child that [s]he does not have the ability to motivate h[er]self to seek out available resources needed now or in the future." (quoting *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied))).

The caseworker testified that, on several occasions, Mother expelled her eldest child from her car. From this testimony, the trial court could infer that Mother would do the same or similar with her younger children if given the opportunity. *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied) ("A trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest."). Although the trial court acknowledged a bond between Mother and her children, Mother missed visits for six consecutive months during the course of the case, and she missed all of her visits in the month before trial. At the time of trial, the children were thriving in their current placement, and adoption was a possibility.

Having reviewed the record, we hold the evidence is legally and factually sufficient to support the trial court's finding that terminating Mother's parental rights was in the children's best interest.

## CONCLUSION

We affirm the trial court's order.

Rebeca C. Martinez, Justice