

# IN THE
# TENTH COURT OF APPEALS

———————————

## No. 10-21-00265-CV

## IN THE INTEREST R.K.P-R., A CHILD

———————————

**From the 74th District Court**
**McLennan County, Texas**
**Trial Court No. 2019-3239-3,2**

---

## MEMORANDUM  OPINION

---

The father of R.K.P.-R. appeals from a judgment that terminated his parental rights to R.K.P.-R. based on Section 161.001(b)(1)(E), (N), and (Q) and the best interest of the child. In one issue, Father complains that evidence was legally and factually insufficient for the trial court to have granted the termination. Because we find that the evidence was not legally or factually sufficient to support the finding based on Section 161.001(b)(1)(E) but was legally and factually sufficient to support the termination based on Section 161.001(b)(1)(Q) and the best interest finding, we delete the finding pursuant to Section 161.001(b)(1)(E) but otherwise affirm the judgment of the trial court.

## STANDARD OF REVIEW

In order to sever a parent's rights to their children, there must be clear and convincing evidence that legal grounds exist to terminate those rights and that the termination is in a child's best interest. *In re J.F.-G.*, 627 S.W.3d 304, 311 (Tex. 2021). That is, the State must provide the measure or degree of proof that will produce in the mind of the trier of fact "a firm belief or conviction as to the truth of the allegations sought to be established." *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018). Only one predicate finding under section 161.001(b)(1) of the Family Code is required when there is also a finding that termination is in a child's best interest. *See In re J.F.-G.*, 627 S.W.3d at 312.

When measuring the legal sufficiency of the evidence, the evidence must be considered in the light most favorable to the finding to determine whether a factfinder "could reasonably form a firm belief or conviction about the truth of the matter." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). Likewise, the reviewing court must "disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* If the court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then the court must conclude that the evidence is legally insufficient. *Id.*

It is only when the factual sufficiency of the evidence is challenged that the reviewing court reviews disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re J.F.C.*, 96 S.W.3d at 266. "If, in light of the entire record, the disputed

evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266. We give due deference to the factfinder's findings, and we cannot substitute our own judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

In this case, the trial court found that Father had committed three of the acts listed in Section 161.001(b)(1)—those found in subsections (E), (N), and (Q). Specifically, the trial court found that Father had "engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being," that Father had constructively abandoned the child, and that Father had "knowingly engaged in criminal conduct that resulted in his conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date that the petition was filed." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E), (N), (Q). The trial court also found, pursuant to Section 161.001(b)(2), that termination of Father's parental rights was in the best interest of the child.

The Texas Supreme Court has mandated that we must address Father's challenge to the trial court's finding under Section 161.001(b)(1)(E) even if the termination is affirmed on a separate ground, so we will address that part of Father's issue first. *See In re N.G.*, 577 S.W.3d 230, 234-35 (Tex. 2019) (addressing due process and due course of law with respect to appellate review of grounds (D) and (E) and holding that an appellate

court must provide a detailed analysis if affirming the termination on either of these grounds).

**FAMILY CODE SECTION 161.001(b)(1)(E)**

Father argues that the evidence was legally and factually insufficient for the trial court to have found that he "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). "Endanger" means "to expose a child to loss or injury, or to jeopardize a child's emotional or mental health." *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam). An endangerment finding often involves physical endangerment, but it is not necessary to show that the parent's conduct was directed at the child or that the child suffered actual injury. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). "Rather, the specific danger to the child's well-being may be inferred from the parent's misconduct alone." *Id*. In our endangerment analysis pursuant to Section 161.001(b)(1)(E), we may consider conduct both before and after the Department removed the child from his or her parent. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). In general, a parent's conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of that child. *Boyd,* 727 S.W.2d at 531.

In this proceeding, the evidence established that Father was incarcerated for a felony DWI in April of 2017 when the mother was approximately three months pregnant

with R.K.P.-R. There was no evidence that Father knew that the mother was pregnant at the time he committed the DWI or at the time of his incarceration. Father was incarcerated from April of 2017 until the time of the final trial, and a document introduced into evidence relating to his imprisonment showed a release date in August of 2023. Father had a criminal history that went back many years prior to his current incarceration and included 6 to 8 DWI offenses and other convictions for possession of a controlled substance. There was no evidence that Father had other children. Father found out that R.K.P.-R. had been removed from his mother when he was served with the petition in prison in 2018.

At the termination trial, the Department did not seek termination pursuant to Section 161.001(b)(1)(E). The child's attorney ad litem requested that the trial court terminate pursuant to subsection (E). The Department concedes in its brief to this Court on appeal that the facts of this proceeding are unique in that Father did not commit any criminal conduct after learning about the child's existence and that the evidence to support this ground was "not strong."

The Texas Supreme Court has recently discussed the interplay between imprisonment and a finding pursuant to Section 161.001(b)(1)(E) as follows:

> In *Texas Department of Human Services v. Boyd*, we acknowledged that "Texas cases have considered the involuntary termination of the rights of an imprisoned parent, and have held that mere imprisonment will not, standing alone, constitute engaging in conduct which endangers the emotional or physical well-being of a child," but we nevertheless held that incarceration does support an endangerment finding "if the evidence,

> including the imprisonment, shows a course of conduct which has the effect of endangering the physical or emotional wellbeing of the child." *Tex. Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533-34 (Tex. 1987). A parent's criminal history—taking into account the nature of the crimes, the duration of incarceration, and whether a pattern of escalating, repeated convictions exists—can support a finding of endangerment. *See In re J.O.A.*, 283 S.W.3d 336, 345-46 (Tex. 2009). Imprisonment thus "is certainly a factor" the trial court may weigh when considering endangerment. *Boyd*, 727 S.W.2d at 533.

*In re J.F.-G.*, 627 S.W.3d 304, 312-13 (Tex. 2021). However, while the facts regarding the lengthy criminal history of the parent, lengthy incarceration, and escalation of offenses are somewhat similar to *J.F.-G.*, there is a significant distinction in that in *J.F.-G.*, the parent's criminal conduct took place both before and after the parent was aware of the birth of the child. However, in this proceeding there is no evidence that Father even knew that he was to be a parent at the time of his last criminal offense and imprisonment. There must be some connection between the timing of some part of Father's criminal offenses and Father's knowledge of paternity to support a finding that a child, whether it be the child whose relationship is terminated or some other child in Father's life, has been endangered by Father's criminal behavior. Because there is no evidence of any connection in time between any of Father's criminal offenses and the endangerment of R.K.P.-R. or any other child, we find that the evidence was legally and factually insufficient for the trial court to have found that he endangered R.K.P.-R. based solely on conduct that occurred prior to his knowledge that the mother was pregnant and that did not affect the mother or the child, such as using drugs with the mother might.

Section 161.001(b)(1)(E) also allows for termination if the parent "knowingly placed the child" with a person who endangered the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E). However, there was no evidence that Father knowingly placed R.K.P.-R. with anyone who endangered him, and the Department does not argue that the evidence was sufficient to support the termination on this basis.

Because we find that the evidence was legally and factually insufficient pursuant to Section 161.001(b)(1)(E), we modify the judgment of the trial court to delete the finding under this section.

**FAMILY CODE SECTION 161.001(b)(1)(Q)**

Father complains that the evidence was legally and factually insufficient for the trial court to have found that his rights should be terminated pursuant to Section 161.001(b)(1)(Q). Under subsection 161.001(b)(1)(Q), a parent's rights can be terminated when a parent has "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of the filing of the petition." TEX. FAM. CODE ANN. § 161.001(b)(1)(Q). Subsection Q applies prospectively in anticipation of a parent's inability to care for the child and not just in response to it. *In re A.V.*, 113 S.W.3d 355, 360 (Tex. 2003). This provision is not an additional punishment for a parent's criminal conduct; instead, it is used to "ensure that the child will not be neglected" while the parent is incarcerated. *Id*. Proof that the parent is unable to care for

the child is an additional requirement that is not met by showing incarceration alone. *In re H.R.M.*, 209 S.W.3d 105, 110 (Tex. 2006) (per curiam) ("Terminating parental rights under subsection Q requires that the parent be both incarcerated or confined and unable to care for the child for at least two years from the date the termination petition is filed.").

We employ a burden-shifting analysis to assess an incarcerated parent's ability to care for a child. *In re J.G.S.*, 574 S.W.3d 101, 118-19 (Tex. App.—Houston [1st Dist.] 2019, pet. denied). The party seeking termination must first establish that the parent will remain in confinement for the requisite period. *In re B.D.A.*, 546 S.W.3d 346, 358 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). The burden then shifts to the parent to produce "some evidence" as to how he would provide or arrange to provide care for the child during his incarceration. *Id*. "Cases discussing the incarcerated parent's provision of support through other people contemplate that the support will come from the incarcerated parent's family or someone who has agreed to assume the incarcerated parent's obligation to care for the child." *In re H.R.M.*, 209 S.W.3d at 110. When the incarcerated parent meets that burden of production, the petitioner has the burden of persuasion to show by clear and convincing evidence that the parent's arrangement would not satisfy the parent's duty to the child. *In re Caballero*, 53 S.W.3d 391, 395 (Tex. App.—Amarillo 2001, pet. denied).

Here, Father does not dispute that he knowingly engaged in criminal conduct resulting in his incarceration for at least two years from the date of the filing of the

petition in 2018 and that he is unable to physically care for the child while he is in prison. Father argues that since R.K.P.-R. has been placed with his sister that he has met his burden to show that he has provided care for R.K.P.-R. However, R.K.P.-R. was placed with Father's sister at the request of R.K.P.-R.'s mother, and Father was not involved in that decision. Father's sister and mother both testified that R.K.P.-R. was not placed with or that he remained with the sister at the request of Father. Further, Father's sister asked for termination so that she could adopt R.K.P.-R. Father had not provided any support for the child and had minimal contact with the child, but not since sometime in 2019 through Father's mother. Father presented no evidence to the contrary.[1]

We find that Father did not satisfy his burden after it shifted to him to show "some evidence" that he had arranged or provided care for R.K.P.-R. while he was in prison, and therefore, the evidence was legally and factually sufficient for the trial court to have granted the termination pursuant to Section 161.001(b)(1)(Q). Because we have found sufficient evidence as to one ground in support of the termination, it is not necessary to address Section 161.001(b)(1)(N).

**BEST INTEREST OF THE CHILD**

Father argues that the trial court erred in its finding that termination was in the best interest of the child. With respect to the best interest of a child, no unique set of

---

[1] Father did not appear at the trial although it was conducted remotely by Zoom for reasons that are not stated in the record. He was represented by counsel at the trial.

factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). We use the non-exhaustive *Holley* factors to shape our analysis. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

Father argues that because he will likely have some relationship with the child after his release from prison and because he has taken classes in prison to attempt to better himself and address the reasons for his incarceration renders the evidence insufficient for the trial court to have found that termination was in the best interest of R.K.P.-R. However, the evidence showed that Father had not had contact with R.K.P.-R. since 2019. In 2019, Father's mother called Father in prison and would hold the phone up to R.K.P.-R.'s ear but R.K.P.-R. would push it away. He had not had contact with R.K.P.-R. since 2019. He had not provided support, letters, or gifts for R.K.P.-R. Father's mother testified that Father had "no relationship" with R.K.P.-R. at the time of the trial. According to a friend of Father that testified on his behalf, Father plans to live with his mother after his release from prison, but his mother had already testified that he could not live with her because it would violate her lease. There was no other evidence of Father's plans for the child in the future.

R.K.P.-R. was living with Father's sister and they were very bonded to each other. While the sister was not opposed to the idea of Father having some relationship with

R.K.P.-R. in the future, she wanted to give R.K.P.-R. the permanency and stability of adopting him. She was meeting all of R.K.P.-R.'s physical and emotional needs and R.K.P.-R. was happy living with her. There were no concerns regarding the sister's ability to care for and protect R.K.P.-R.

Viewing the evidence through the prism of the *Holley* factors, we find that the evidence was legally and factually sufficient for the trial court to have found that termination was in R.K.P.-R.'s best interest. We overrule Father's sole issue.

## CONCLUSION

Having found that the evidence was legally and factually insufficient pursuant to Section 161.001(b)(1)(E), we modify the judgment to delete that finding from the judgment. Because we have overruled the rest of Father's sole issue, we affirm the judgment of the trial court as modified.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Johnson, and
    Justice Smith
Affirmed as modified
Opinion delivered and filed January 19, 2022
[CV06]

