

In The
Court of Appeals
Seventh District of Texas at Amarillo

No. 07-25-00337-CV

IN THE INTEREST OF A.C. AND N.C., CHILDREN

On Appeal from the County Court at Law No. 1
Randall County, Texas
Trial Court No. 85739L1, Honorable Jack M. Graham, Presiding

April 30, 2026

MEMORANDUM OPINION

Before DOSS and YARBROUGH and PRATT, JJ.

Appellant, D.C., appeals from the trial court's order terminating the parent-child relationship between him and his two children, A.C. and N.C. The trial court found by clear and convincing evidence that Appellant had engaged in conduct endangering the children under Texas Family Code § 161.001, subsections (D) and (E), and that his criminal conduct had resulted in conviction and confinement rendering him unable to care for the children for not less than two years from the date of filing, under what is now located in subsection (P).

By four issues, Appellant challenges the legal and factual sufficiency of the evidence supporting three grounds for termination[1] and the trial court's finding that termination was in the children's best interest.  We affirm.

## BACKGROUND

The Texas Department of Family and Protective Services filed an emergency suit for the protection of A.C. and N.C. and for termination of the parent-child relationship between each child and each parent.[2]  The Department alleged that Appellant had been arrested after he punched the children's mother in the face several times, choked her until she lost consciousness, and headbutted her on multiple occasions, all while the children were present in the same hotel room.[3]  An additional allegation was that Appellant used methamphetamine, which he acknowledged.  The trial court granted the Department's emergency motion for removal and established a family plan of service for Appellant.

Rudolfo Flores, the Department's investigator, was assigned to the case following intake.  Appellant admitted to a methamphetamine addiction and a prior incarceration for aggravated assault with a deadly weapon.  He acknowledged striking the mother four times, explaining that he stopped when one of the children woke up.  He attributed the "issues" in their relationship to his drug use.

---

[1] Appellant does not challenge the trial court's finding under subsection (P) that his criminal conduct resulted in a conviction and confinement rendering him unable to care for the children for at least two years from the date the petition was filed.

[2] The trial court terminated the relationships between the children and their mother pursuant to an affidavit of relinquishment.  *See* TEX. FAM. CODE § 161.001(b)(1)(K).  Mother is not a party to this appeal.

[3] D.C. pleaded guilty to the offense, was convicted of third-degree felony assault, and sentenced to three years' incarceration.

Amarillo Police Department Officer Chester Ligon testified that he responded to the call that led to Appellant's arrest for assault family violence. By the time Ligon arrived, the mother was already in the emergency room receiving treatment. She confirmed that Appellant had punched her in the face, choked her, and headbutted her, knocking out a tooth. She also disclosed a prior incident of assault by Appellant in front of their oldest child.

The Department did not initially seek to remove the children because they remained with their mother while Appellant was held in county jail. However, the mother then relocated back to Amarillo without notifying the Department, violating the safety plan established to protect the children. This concerned the Department particularly because the family had previously received services for similar problems without remediation, yet the mother continued her relationship with Appellant. About a month after the emergency removal, Appellant was arrested for violating a protective order prohibiting him from contacting the mother.

Appellant remained incarcerated throughout the case. He had no visits with the children and completed only one anger management class. At trial, he testified that he had completed anger management and parenting classes and intended to engage in counseling, though he acknowledged no participation in any services directly addressing domestic violence. Although eligible for parole at the time of trial, his sentence extends through December 2027.

The children's foster placement testified that she was willing and able to adopt the children should parental rights be terminated. Apart from a brief return to their mother,

3

the children had remained in the same foster home for most of the case. The foster mother testified that she had experience with children who have trauma-related or behavioral issues and that the children were bonded with her family.

The trial court terminated the parent-child relationship between each parent and each child. This appeal followed.

## TERMINATION GROUNDS

The standards for reviewing the evidence for sufficiency are well-known and require little elaboration. *See In re J.F.–G.*, 627 S.W.3d 304 (Tex. 2021). As factfinder, the trial court exclusively judges witness credibility and weighs testimony. *In re H.E.B.*, No. 07-17-00351-CV, 2018 Tex. App. LEXIS 855 at *5 (Tex. App.—Amarillo Jan. 31, 2018, pet. denied) (mem. op.). While only one predicate ground is necessary to support termination of parental rights when it is in the best interest of the child, due process requires review of the endangerment grounds when presented, as termination of rights under predicate grounds (D) or (E) can carry consequences for the parent's relationship with other children. TEX. FAM. CODE § 161.001(b)(1)(M); *In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019).

Subsection (E) requires proof that a parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(E). The relevant inquiry focuses on whether the parent's conduct, including acts, omissions, and failures to act, endangered the children. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Termination under Subsection (E) requires more than a single act

4

or omission; it demands a voluntary, deliberate, and conscious course of conduct. *In re M.M.*, 584 S.W.3d 885, 890 (Tex. App.—Amarillo 2019, pet. denied). The conduct need not target the child directly, nor must the child suffer actual injury. *Id.*

We begin with Appellant's second issue. Appellant primarily contests the termination on the ground that he was not "actively endangering the children at the time of removal." He further argues there was no child-directed abuse at the time of filing. Both contentions suggest a temporal limitation on the endangerment inquiry that the statute does not support. *See* TEX. FAM. CODE § 161.001(b)(1)(E); *In re A.Y.C.*, 665 S.W.3d 800, 811 (Tex. App.—Houston [14th Dist.] 2023, pet. denied) ("Under subsection (E), however, courts may consider conduct before and after the Department removed the child from the home."). A pattern of drug use accompanied by circumstances that indicate related dangers to the child can establish a substantial risk of harm. *In re R.R.A.*, 687 S.W.3d 269, 278 (Tex. 2024). Criminal activity, convictions, incarceration, domestic violence, and a propensity for violence can each support an endangerment finding as well. *In re L.M.*, 572 S.W.3d 823 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *In re M.K.V.*, 648 S.W.3d 478, 487 (Tex. App.—San Antonio 2021, no pet.)

The evidence at trial identified multiple acts of domestic violence by Appellant directed at the children's mother, a conviction for violating a protective order, and a prior conviction for aggravated assault with a deadly weapon. The evidence further showed that Appellant's admitted methamphetamine addiction, in combination with the domestic violence, had led to prior Department involvement with no remediation. Appellant's temporal argument and his theory that the children were not physically harmed do not overcome the well-established precedent to the contrary. *See In re A.Y.C.*, 665 S.W.3d

5

at 811; *In re M.K.V.*, 648 S.W.3d at 487. The evidence is legally and factually sufficient to support termination under Subsection (E).

The trial court terminated Appellant's parental rights on grounds (D), (E), and (P); because Appellant does not challenge the (P) finding, and because we uphold termination on ground (E), we hold sufficient evidence supports the trial court's judgment.

Because only one predicate ground need support termination, we do not address Appellant's first and third issues. *See In re N.G.*, 577 S.W.3d at 237.

## BEST INTEREST

Appellant also challenges the trial court's finding that termination of the parent-child relationship was in the children's best interest. In *Holley v. Adams*, the Supreme Court of Texas promulgated a non-exhaustive list of factors for assessing a child's best interests, 544 S.W.2d 367, 372 (Tex. 1976). Evidence probative of the termination grounds may also be probative of best interest. *In re A.C.*, 560 S.W.3d 624, 631–32 (Tex. 2018). The Department need not present evidence of each *Holley* factor; in some circumstances, evidence of only one may be sufficient. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

As he did in his second issue, Appellant argues that the absence of physical injuries to the children undermines the trial court's best-interest finding. He also contends that the lack of evidence showing the children feared him, or that he had abandoned them, cuts against best interest. Finally, he argues that the trial court's earlier order returning the children to their mother for monitoring establishes that reunification remained appropriate.

6

Evidence that a parent has engaged in a pattern of domestic violence, particularly in front of the children, supports a best-interest finding. *See In re E.A.R.*, 672 S.W.3d 716 (Tex. App.—San Antonio 2023, pet. denied) (affirming a best-interest finding on evidence that father abused Mother in front of the children and used methamphetamine). So, too, does D.C.'s history of methamphetamine use and criminal convictions.[4] *See id.* That the children were returned to their mother at one point does not defeat the best-interest finding, particularly where the evidence shows that arrangement failed and Mother ultimately relinquished her rights.

Beyond the evidence supporting Subsection (E), the record showed that Appellant offered no adequate excuse for his conduct, completed minimal services to address the conditions leading to removal, could not care for the children at the time of trial due to incarceration, and had no viable plan for the children's future. *See Holley*, 544 S.W.2d at 372. The children, by contrast, were doing well in their current placement with a foster mother who was willing and able to adopt them. *See id.* The evidence was legally and factually sufficient to support the trial court's best-interest finding. We overrule Appellant's fourth issue.

---

[4] D.C. asserts that his criminal history cannot support termination because it is not directly tied to danger to the children. However, D.C.'s cited authority does not support his proposition. *See In re J.F.-G.*, 627 S.W.3d 304, 313 (Tex. 2021) (discussing incarceration in the context of endangerment for (E) grounds and concluding that escalating, repeated convictions and considerations into the nature of the crimes and length of incarceration can support an endangerment finding under (E)). Moreover, D.C.'s convictions for domestic violence, violation of a protective order, and aggravated assault with a deadly weapon *do* relate to danger to the children.

## CONCLUSION

Having held that the trial court did not err in terminating Appellant's parental rights, we affirm the judgment.


Lawrence M. Doss
Justice